John PLENTTY

v.

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA.**

Civ. A. No. 69–918.

United States District Court
E. D. Pennsylvania.

July 22, 1969.

Stephen A. Sheller, Astor & Weiss, Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendant.

FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

WOOD, District Judge.

This is a motion for a preliminary injunction. On November 7, 1968, the General President of the defendant Laborers' International Union of North

America (hereinafter "International"), proceeded under powers vested in him under the Union Constitution to impose a trusteeship on Local 332. The plaintiff, a member of Local 332, and its Secretary-Treasurer prior to November 7, 1968, seeks an order restraining the International from maintaining the trusteeship. We have decided to grant the motion, and we make the following Findings of Fact, Discussion and Conclusions of Law:

### FINDINGS OF FACT

1. John Plentty, the plaintiff in this action, is a member in good standing of Local 332 of Laborers' International Union of North America. Local 332 represents approximately 3,800 members (N.T. 12).

2. On June 19, 1967, Mr. Plentty was duly elected as the Secretary-Treasurer of Local 332 by a secret ballot of the membership (N.T. 14).

3. On July 8, 1968, Joseph Moreschi, the General President of Laborers' International, sent a letter addressed to Local 332, its officers and members, stating that he had received complaints and reports that Local 332 was being operated in a manner not in accordance with the Union Constitution. Mr. Moreschi then invoked his powers as President under Article IX, Section 6 of the Union Constitution to investigate the situation. The Harrisburg Regional Office of the International was designated to perform the investigation, and the local officers and members were directed to cooperate. (Ex. R-2)

4. Also on July 8, 1968, President Moreschi sent a letter to Dominic Pelusi, the Regional Manager of the Harrisburg Regional Office, appointing him as his deputy for the purpose of investigation. (Ex. R-1)

5. On or about July 24, 1968, the Harrisburg Regional Office convened a meeting of the Executive Board of Local 332 at which the Regional Manager, Mr. Pelusi, and the International Staff Representative Willard Harper were present, and at which the affairs of the Local were discussed generally. (N.T. 19–25)

6. Between July 24, 1968, and November 7, 1968, when the trusteeship was imposed, Mr. Harper spent time investigating the affairs of the Local and conversing with its members. (N.T. 26–7)

7. Article IX, Section 7 of the Constitution of Laborers' International Union of North America, which was in effect at the time of the events involved, states in relevant part that:

"When the General President finds, in his opinion, that action by him is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carry out the legitimate objects of such Subordinate Body or the International Union, or to protect the organization as an institution, he may impose and establish a trusteeship over such Subordinate Body and direct the manner in which the affairs and business of such Subordinate Body are to be conducted; during the period of such trusteeship, all the officers of the Subordinate Body are relieved of their particular trust. The Subordinate Body and the officers and members thereof shall cooperate with the trustee designated by the General President, in order that the purposes of the trusteeship may be accomplished and the autonomy of the Subordinate Body restored as soon as possible. All the officers, officials, employees or members shall turn over to the trustee, all monies, books, papers, paraphernalia or other property of the Subordinate Body in their custody, possession or control. * * *

"Any Subordinate Body, officer or member thereof, who is aggrieved by the action of the General President in imposing trusteeship, may immediately but not later than thirty days

thereafter, appeal to the General Executive Board, which appeal shall be scheduled for hearing not later than sixty days thereafter. But the filing of such appeal shall not stay the power of the General President until and unless after a hearing, the General Executive Board shall so rule, order or direct."

8. On November 7, 1968, General President Moreschi sent the following letter to Local 332 and its members. (Ex. P-3)

"Local Union 332, Its Officers and Members
1350 Ridge Avenue
Philadelphia, Pennsylvania 19123

Dear Sirs and Brothers:

As you know, I was previously made aware of complaints indicating that the affairs of the Local Union had not been conducted in a proper constitutional manner, as a result of which, on July 8, 1968, I officially advised you that pursuant to the authority vested in me under Article IX, Section 6 of the International Union Constitution, that a complete and thorough investigation of the affairs of the Local Union would be required.

I have since been provided with additional complaints and a report on the results of the investigation. Based thereon, and after carefully considering all of the conditions existing within Local Union 332, and particularly because of the manner in which the affairs of the Local Union have been conducted, I find it necessary to invoke my constitutional power as General President of the International Union, under Article IX, Section 7 of the International Union Constitution, in order to protect and preserve the welfare and interests of the Local Union as an institution and its membership. The reports and complaints disclose that, among other things:

The officers of the Local Union have been unable to work together, thereby creating dissension between the administration of the Local Union and the membership, and among the officers and the members;

That, contrary to the duties imposed upon the principal officers of the Local Union as provided in Article IV, Section 3 of the Uniform Local Union Constitution, the good standing membership of many of the members of the Local Union has been placed in jeopardy through improper handling of the membership records;

The auditors have not fulfilled their obligations in conducting quarterly audits; no financial reports have been made to the membership in a regular and accurate manner;

Meetings of the membership have not been properly conducted and, in many cases, could not be completed due to the disruptive conditions which the officers allowed to prevail, including acts of violence;

The work and trade jurisdiction allotted to the Local Union has not been properly policed in the field, resulting in numerous opportunities for organization to be lost, and further resulting in the basic trade jurisdiction of this International Union being performed by other trades;

That specifically with regard to finances, an auditor's report specially performed during the course of the investigation revealed that the Local Union has, contrary to the provisions of Article IX of the Uniform Local Union Constitution, failed to operate within its income and has an operating deficit in excess of $30,000. Notwithstanding the deficit, the Local Union has failed to comply with the provisions of Article IX of the Uniform Local Union Constitution by taking appropriate steps to place it on a sound financial footing. In addition, various shortages were disclosed which, as noted by the Certified Public Accountant, reflect the dangers inherent in the present record-keep-

ing system of the Local Union which 'permitted them to occur without prior detection'.

That due to the failure of the Local Union to give proper attention to the organization of unorganized laborers, and the failure of the field personnel to properly police the trade jurisdiction of the Local Union, the membership has substantially declined and, consequently, the Local Union's financial condition has suffered commensurately;

That as a result of the foregoing and, due to the presence of outside influences which are infiltrating the Local Union, the relationship which Local Union 332 has had with employers and employer associations under collective bargaining, and with sister trades in the American Federation of Labor and Congress of Industrial Organizations, has deteriorated to the extent that the Local Union is reflecting an adverse image in the community and in the labor movement;

The Local Union has, therefore, failed to operate in accordance with the purposes and principles for which its charter was granted.

Accordingly, Local Union 332 is hereby placed under the supervision of the International Union and a trusteeship imposed in accordance with the provisions of the Constitution.

The affairs of the Local Union shall be conducted by Vice President Robert E. Powell, whom I hereby designate and appoint my deputy and trustee of the affairs of Local Union 332. During the said period of trusteeship all officers, officials and others operating under purported authority of the Local Union, are relieved of their particular trust. All books and records of the Local Union shall be turned over to the said Trustee. Henceforth, no money shall be drawn from the account of the Local Union except upon the signature of the said Trustee and such person as he may appoint to carry on the duties of temporary secretary-treasurer of the Local Union.

Your Local Union and the officers and members thereof, are hereby directed to cooperate fully with the Trustee, whom I have designated, in order that the purposes of the trusteeship may be fulfilled and the autonomy of your Local Union restored as soon as possible.

This International Union will give bond for the faithful performance of the duties of the said Trustee, temporary officers and persons employed to carry on the affairs of your Local Union during the period of trusteeship, in such form and amount as may indemnify against any possible loss.

The Trustee will, from time to time, call meetings of the membership of the Local Union in order to keep them advised with respect to the affairs of the Local Union. The said meetings will, of course, be presided over by the said Trustee.

If any officer or member of your Local Union is aggrieved by my action in imposing trusteeship, he may in accordance with the provisions of the Constitution, immediately but not later than thirty days after receipt of this communication, appeal to the General Executive Board, which appeal shall be scheduled for hearing not later than sixty days thereafter, but the filing of such appeal shall not stay this order of trusteeship until and unless after a hearing, the General Executive Board shall so rule, order or direct.

Fraternally yours,
JOS. V. MORESCHI
General President"

9. On November 22, 1968, Mr. Reginald Lopes sent the International a letter requesting an appeal of the General Executive Board's decision to place Local 332 in trusteeship. (Ex. R-4-B) Several days later, Mr. Plentty sent a similar notice to the International. (Ex. R-4-A)

10. The hearing of the appeals of Messrs. Plentty and Lopes were heard at the Hotel Commodore in New York City on Monday, January 6, 1969. (See Ex. P-1) The panel which heard the case was composed of Maurice Fancher and Michael Lorello, Vice-Presidents of the International. In the course of the relatively brief hearing, neither the International nor the trusteeship presented any evidence to suggest cause for the imposition of a trusteeship on Local 332. At the outset and throughout the hearing Mr. Plentty requested that evidence be presented to substantiate the charges made by the Union, but he was told by Messrs. Fancher and Lorello in effect that they were conducting an appeal from a decision previously reached and that therefore the burden was on Mr. Plentty and Mr. Lopes to present evidence to show why the trusteeship was invalidly imposed. Messrs. Plentty and Lopes protested that it was difficult to present evidence to refute charges of the International for which no evidence had been presented to support, and that the charges were of such a general nature that they were difficult to refute. Finally, Mr. Plentty (p. 18 *et seq.*) entered on the record a document which recited the charges made by General President Moreschi in his letter of November 7, 1968, and attempted to rebut these charges generally. (Ex. P-1)

11. On January 21, 1969, Mr. Terence J. O'Sullivan, the General Secretary-Treasurer of the International by letter informed Mr. Lopes and Mr. Plentty that

"After carefully reviewing and considering the record in this case, the Panel

"FINDS: That the action of the General President imposing Trusteeship in Local Union 332, Philadelphia, Pennsylvania, was justified and warranted, and therefore

"RECOMMENDS: That the protests and appeals of the Appellants be denied." (Ex. R-7)

12. During the period since the trusteeship was imposed, only one meeting of the membership of the Local has been held. Mr. Plentty has not received his salary as an officer, nor has he been permitted to perform the duties of his office. (N.T. 31–4)

## DISCUSSION AND CONCLUSIONS OF LAW

The primary contention advanced by the plaintiff at the preliminary hearing was that the trusteeship imposed on Local 332 was invalid because under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 461 *et seq.*[1] a trusteeship is invalid unless it is authorized or ratified by the International after a "fair hearing" of the reasons for imposing it. The International argues to the contrary that such a hearing is not essential to the validity of a trusteeship under the Act and that, in any event, the proceedings before International officers on January 6, 1969, constituted a fair hearing.

Some consideration of the statutory context is appropriate before reaching the questions at hand. Section 462 of the Act provides that:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

Section 464(a) provides that a member of a subordinate body aggrieved by a violation of the provisions of the Act relating to trusteeships may commence a civil action in the District Court challenging the validity of a trusteeship

---

1. P.L. 86–257, 73 Stat. 519, 86th Congress, S. 1555, September 14, 1959.

imposed on a subordinate body of which he is a member.[2] In § 464(c) it is further provided that in such an action:

" * * * a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 * * *." [3]

The International contends that under this section a fair hearing is not made a necessary condition to the establishment of a trusteeship, but that it merely gives the benefit of a presumption of validity if a hearing is held in accordance with procedural requirements contained in the Union Constitution and bylaws. In the absence of a fair hearing, it is argued, the aggrieved member must still sustain "the normal burden of establishing by a preponderance of the evidence that the trusteeship was imposed for improper purposes." [4] The International argues further that Congress did provide explicitly for a fair hearing in other sections of the same

---

2. In this regard, it has been contended by the International that under § 464(a) it is provided that primary exclusive jurisdiction of complaints by aggrieved members concerning trusteeships is in the Secretary of Labor, and that this suit should be dismissed because there has been no prior resort to him. § 464(a) states in relevant part that:

"Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 * * *) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court (for appropriate relief) * * * Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 * * *) may bring a civil action in any district court (for appropriate relief)."

While the authorities are admittedly mixed on this issue, we think the better view is that the remedies of the aggrieved member are alternate, and that there is no primary jurisdiction in the Secretary of Labor. If the aggrieved member desires to remain anonymous, or if he lacks resources to initiate a lawsuit, he is provided at least some relief by resort to the Secretary. However, requiring complaint to the Secretary prior to bringing any action in Court would serve no useful purpose, since if the Secretary refused to act, the aggrieved member could still bring his civil suit, and since preliminary resort to the Secretary would only delay timely relief to an aggrieved member in a proper case. See Forline v. Helpers Local No. 42, 211 F.Supp. 315 (E.D.Pa.1962) ; Vars v. International Brotherhood of Boilermakers, et al., 204 F.Supp. 245 (D.C. Conn.1962), affd. 320 F.2d 576 (2nd Cir. 1963) ; United Brotherhood of Carpenters and Joiners of America v. Brown, 343 F.2d 872 (10th Cir. 1965) ; Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4th Cir. 1963) ; cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963).

3. Data and discussion concerning the administration of trusteeships under these sections may be found in Report to Congress on the Operation of Title III of the Labor Management Reporting and Disclosure Act (G.P.O., 1962) and Compliance, Enforcement, and Reporting in 1968 under the Labor Management Reporting and Disclosure Act (U.S. G.P.O., 1968).

4. P. 3 of the trial memorandum for the defendant.

Act,[5] and had it desired to provide that a fair hearing must be held to impose or ratify imposition of a trusteeship, it would have explicitly so stated.

After a review of the relevant authority we come to the contrary conclusion. The International concedes that under the common law prior to the passage of the Act a trusteeship imposed upon a subordinate body was invalid unless the subordinate body was granted a fair hearing. See *e.g.* Underwood v. Maloney, 152 F.Supp. 648 (E.D.Pa.1957), rev'd on other grounds, 256 F.2d 334 (3rd Cir. 1958); Riverside Lodge No. 164 et al. v. Amalgamated Association of Iron, Steel and Tin Workers of North America et al., 13 F.Supp. 873 (W.D. Pa.1935).[6] The legislative history of the Act indicates that Congress recognized this common law requirement but wished to put further limitations upon the power to impose and maintain trusteeships, and through the passage of Sections 461 *et seq.* to provide a legal basis for aggrieved members of subordinate bodies to contest the establishment of a trusteeship where, as the hearings of the McClellan Committee had demonstrated was at times the case, trusteeships were imposed for reasons deemed improper. The eighteen-month presumption in § 464(c) was included to encourage labor organizations to adopt fair hearing procedures in their constitutions and to give presumptive validity for a limited period to honest decisions of such organizations in ordinary cases where trusteeships were imposed for proper purposes. House Report, No. 741, found in U.S.Code Congressional and Administrative News, 86th Congress, First Session, 1959, Vol. 2 at pp. 2424, 2435–2436, states in relevant part that:

" * * * 'trusteeships' * * * are among the most effective devices which responsible international officers have to insure order within their organization. * * * However, labor history and the hearings of the McClellan committee demonstrate that in some instances trusteeships have been used as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization.

"The present rules of law applicable to union trusteeships furnish inadequate protection for two reasons. The legal theory applied by the courts is often inadequate. *A trusteeship will ordinarily be set aside unless the local is given a fair hearing, including notice of the charges and an opportunity to defend.* But if the forms of fair procedure are observed there appears to be little the courts can do and there are very few cases staying or up-

---

5. See 29 U.S.C. § 411(a) (5): *"Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

6. Judge Clary, former Chief Judge of our Court, stated in *Underwood* in holding a trusteeship invalid in circumstances similar to those in the instant case: "What are the facts in the union case? The facts in the union case are that the reasons for imposition of supervision— and proper ones, in my view—are set forth in the order invoking supervision. Conceivably someone might have thought they contained a statement of charges, but I do not so regard it. For substantive due process there must be reasonable grounds and good faith. The invoking of supervision was proper, was done without malice, was done in good faith, but how about the procedural due process? Where are the written charges? Where is the opportunity to answer? Where is the opportunity to secure evidence to refute the charges? Where is the hearing before the duly constituted Trial Committee at which evidence is given in support of the charges before the union is called upon to meet them, and where is the opportunity for the union itself to present evidence to refute such charges? Where has that been shown in the record in this case?" 152 F.Supp. at 668.

setting trusteeships upon substantive grounds * * *.

"The committee bill places limits on the reasons for which trusteeships can be imposed and the period for which they may be continued * * *.

"The presumption is available, however, only if the trusteeship was instituted and maintained in procedural conformity with the constitution and bylaws of the international labor organization and authorized or ratified after a fair hearing either by its executive board or other body provided in its constitution. This limitation will encourage the use of fair procedure within the union. The purpose is to make it plain that an honest decision by the international officials is not to be overturned during the first 18 months of the receivership upon a question of fact or of degree or of judgment as to the necessity for imposing it. On the other hand, if dishonesty or bad faith is proved, either with respect to the establishment or maintenance of a trusteeship, the bill provides a remedy." (Emphasis ours).

The Senate report is to the same effect. *Ibid.* pp. 2318, 2333, and there is no mention of the subject in the Conference Report.

■ To read the Act as requiring a fair hearing to authorize or ratify the imposition of a trusteeship not only comports with this legislative history but also with the general purposes of the Act, namely, to require disclosure of the reasons for union actions in matters touching the governance of local union affairs. It would be difficult to understand why Congress would require a fair hearing in seemingly less significant cases where individual members are punished or censured, see 29 U.S.C. § 411(a) (5), but not require a fair hearing in cases involving the displacement of democratically elected officials and the termination of their salary and status.

A like result was reached by the Court in Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, 261 F.Supp. 433, 435–436 (D.Mass. 1966). The International has contended, however, that the decisions in Sawyers v. Grand Lodge, International Association of Machinists, et al., 279 F.Supp. 747 (E.D.Mo.1967) and Jolly v. Gorman, 304 F.Supp. 15, 70 L.L.R.M. 3119 (S. D.Miss., 1969) squarely hold that a fair hearing is not essential to the validity of a trusteeship imposed pursuant to § 462–464. To the contrary, the Court in *Jolly* cited *Local No. 2* with approval and then held under the circumstances of that case that a fair hearing *had* been held to ratify imposition of the trusteeship so that it was entitled to the presumption of validity in § 464(c). 70 L.L.R.M. 3124–5. In *Sawyers* the issue of whether the Act requires a hearing does not seem to have been pressed and the complainant was apparently contending that under the circumstances of that case the requirements of the Union Constitution and bylaws were not complied with. Neither *Jolly* nor *Sawyers* discussed the issue presented here. In any event, to the extent that they are at odds with *Local No. 2* and the other authority herein cited, we adopt the latter.

■ Since we conclude that a trusteeship imposed on a subordinate body is invalid without a fair hearing, the question remains whether under the circumstances of this case a fair hearing was held. We think not. The Union Constitution and the letter from General President Moreschi on November 7, 1968, both characterized the proceedings before the International Vice-Presidents on January 6, 1969, as an "appeal" from a decision already reached at a lower level. As is recounted in our Findings of Fact, no evidence was presented by the International or the trustees to justify the imposition of the trusteeship. Consequently, Mr. Plentty and Mr. Lopes had no opportunity to confront and cross-examine witnesses or rebut the case

against them. *Cf. Local No. 2, supra.* On several occasions, Mr. Plentty asked for some evidence to be presented in favor of imposition of the trusteeship because the statements in General President Moreschi's letter were vague and general, so that he would have something to refute. He was told that a decision had already been reached to impose a trusteeship and that the proceedings were to be limited to hearing Mr. Plentty state why the trusteeship should not be continued. Such a proceeding could hardly be characterized as a fair hearing of the reasons for establishment of the trusteeship, because those reasons and evidence supporting them were never introduced on the record. We think that a fair hearing for the purposes of § 464 implies at least the procedural requirements of notice, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal. The decision of the International contemplated by the Act is to be reached after a formal airing of the facts on the record and not on the basis of hearsay reports. See Local No. 2, *supra,* and Underwood v. Maloney, *supra.*

■ In view of the foregoing conclusions, since these conclusions are based upon legal determinations which would probably not be altered by further hearing, and since in our judgment the petitioner has no adequate remedy at law and will suffer irreparable harm if we deny him a remedy at this time, we are disposed to grant an injunction against further maintenance of the trusteeship of Local 332. At the same time we are cognizant of other equities in this situation. The petitioner here has waited several months after the imposition of the trusteeship and after the proceedings on January 6 to bring this action. If we granted the injunction to take effect now, the International might well attempt to reimpose the trusteeship, with the result that Local affairs might be further disrupted. Therefore, we will grant the injunction but suspend its issuance for 45 days, during which time the International will have the opportunity to hold a fair hearing as heretofore discussed. If no such hearing has been held in 45 days from the date of our order, the injunction will issue as of course.

Because of the foregoing conclusions, we do not deem it necessary to reach the other contentions advanced by the parties.