**J. D. JOLLY et al., Plaintiffs,**

**Granville Sellers and Herbert Ishee, Plaintiffs-Appellants,**

v.

**Walter GORMAN, Individually and as Trustee of, and International Woodworkers of America, AFL–CIO, and Masonite Corporation, Defendants-Appellees.**

**No. 27825.**

United States Court of Appeals, Fifth Circuit.

June 30, 1970.

George Maxey, Laurel, Miss., Jack Peebles, Metairie, La., Benjamin E. Smith, W. William Hodes, Smith & Scheuermann, New Orleans, La., for plaintiffs-appellants.

T. Harvey Hedgepeth, Hedgepeth & Hedgepeth, Jackson, Miss., for Gorman and Woodworkers.

Denton Gibbes, Laurel, Miss., Hulse Hays, Jr., Alan E. Harazin, Cincinnati, Ohio, for appellee, Masonite Corp.; Gibbes & Graves, Laurel, Miss., of counsel.

James E. Youngdahl, McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for Gorman.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants, former officers of Local 5–443 of the International Woodworkers of America, AFL–CIO, brought this suit in the United States District Court for the Southern District of Mississippi, challenging a trusteeship imposed on the Local by the International and also a supplemental collective bargaining agreement between the International and Masonite Corporation. On motions for summary judgment by all parties, the district court held that the trusteeship and the supplemental bargaining agreement were valid, and entered judgment for the defendants.

In March of 1967, the Union and Masonite entered into a collective bargaining agreement covering the employees at Masonite's Laurel, Mississippi plant. The agreement included a no-strike clause, and was to be effective through March 2, 1970. The agreement was executed by the certified union, International Woodworkers of America, "for and on behalf of" the members of Local 5–443. In April of 1967, a dispute arose over assignment of job duties by the employer, which certain employees believed to be inconsistent with the job classification structure at the plant. On April 21, the dispute erupted into a strike of all 2050 active employees. A National Labor Relations Board trial examiner found that the work stoppage was approved and encouraged by the Local.

On April 24, 1967, the IWA president sent a telegram to the president of Local 5–443 directing him to comply with the provisions of the collective bargaining agreement and specifically with the no-strike clause. Compliance did not result. On April 25, 1967, Masonite sued the International and the Local for $25,000 damages for each day of the strike. The International attempted to settle the dispute with Masonite but the employer took the position that no settlement was possible within the framework of an illegal strike. On July 17, 1967, the attorney of the International wrote the Local a letter advising that the legal interests of the membership would best be served by a return to work. No action was taken by the Local.

On September 6, 1967, the International Executive Board considered the Laurel strike problem and directed the International officers "to continue their efforts to end the illegal dispute." After a report from one of his officers, the IWA president requested that Local 5–443 be placed under trusteeship. On November 28, 1967, a special IWA Executive Board meeting was held and the Board directed the International's officers to conclude a settlement with Masonite and to place Local 5–443 in trusteeship to ensure enforcement of that settlement. The agreement between the Union and Masonite was entered on December 6, 1967, and on December 7 a trustee was appointed to administer the affairs of Local 5–443. On November 12, 1968, a formal hearing on this trusteeship was held before the Executive Committee, and the Committee made formal findings and specifically ratified the previous imposition of a trusteeship on the Local.

I.

Appellants argue that the trusteeship imposed by the International on the Local was invalid for three basic reasons:

(1) The procedures outlined in the IWA constitution for the establishment of a trusteeship were not followed by the International in the imposition of this trusteeship, and thus the trusteeship was in violation of the Labor-Management Reporting and Disclosure Act of 1959.

(2) The trusteeship was not established for a proper purpose as defined in the LMRDA and therefore was invalid.

(3) The trusteeship was not imposed after due notice, an opportunity to prepare a defense, and a fair hearing; and therefore was invalid.

*Compliance with the Constitution's Procedures.*

Section 302 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. A. § 462, provides that a trusteeship shall be established by a labor organization over a subordinate body "only in accordance with the constitution and by-laws of the organization which has assumed trusteeship over the subordinate body * * *." Article II, section 7 of the IWA constitution[1] requires that four steps be taken by the International before it imposes a trusteeship on one of its locals: (1) A charge in writing against the local; (2) an immediate written communication of the charge to the local by the International president; (3) efforts to obtain voluntary compliance if the charge is true; and (4) appointment of a trustee upon approval of the International Executive Board. Appellants claim that the second and fourth of these requirements were not complied with in this case.

■■■■ The IWA constitution states that once a charge has been made against a local, "the International Presi-

dent shall immediately communicate in writing by registered mail with the Regional President and the local Union President involved." All parties to the present dispute agree that the registered mail requirement is a technical one and should not control the outcome of this suit. Appellees argue that the telegram dated April 24, 1967, from the International president to the Local president directing the latter to comply with the no-strike obligations of the collective bargaining agreement in existence between the Union and Masonite, or the letter dated July 17, 1967 from the International's attorney to Local President Jolly advising termination of the strike, constituted sufficient notice in writing of the charges against the Local. Appellants disagree. Really, appellants simply make the conclusory statement that the April 24 telegram and the July 17 letter do not satisfy the written communication requirement of the constitution. Such a conclusory statement, unsupported by analysis or a line of logic, is not persuasive and allows this Court to make its own conclusions. Our conclusion is this: The written communication requirement of the constitution contemplates that fair warning of a charge be given to the Local, and the telegram sent to the Local president directing him to comply with the collective bargaining agreement and the letter sent to the Local advising it to end the unlawful

---

1. The principal trusteeship reference in the IWA Constitution is found in Article II, Section 7:

When a charge has been made in writing to the International President or International Executive Board that either this Constitution, Local Union By-Laws or the Regional Constitution is being violated by a Region or Local Union, the International President shall immediately communicate in writing by registered mail with the Regional President and the Local Union President involved. He shall point out the alleged violation and upon determining that there is a violation, he shall seek voluntary compliance to end the violation. Failing to attain compliance, the International President may appoint upon approval of the International Executive

Board a Trustee to supervise and administer all of the affairs of the Region or Local Union. The Trustee shall continue in this activity either until the cause for the violation has been corrected or until the next International Executive Board Meeting, whichever occurs first. If the matter reaches the International Executive Board, the Board shall determine whether or not the Trusteeship shall continue. If the Trusteeship is continued the Board shall review the situation at its next meeting and shall again determine whether or not the Trusteeship shall continue. In the event a Local Union or Regional Council has been placed in Trusteeship, the International Executive Board shall make a complete report to the next International Convention for its action.

strike, gave the local fair warning that a charge had been made against it and that the International was deeply concerned about the Local's activities. An opposite interpretation of the constitution and the communications sent to the Local would be unduly technical and restrictive. *Cf.* Schonfield v. Raftery, S. D.N.Y. 1967, 271 F.Supp. 128.

■ The second provision of Article II of the IWA constitution that was allegedly violated was the requirement that "the International President may appoint upon approval of the International Executive Board a Trustee to supervise and administer all of the affairs of the Region or Local Union". We think this provision was complied with in this case, and hold that the trusteeship was imposed "upon approval of the International Executive Board."

■ A special IWA executive board meeting was held on November 28, 1967, which was attended by Local president Jolly. The minutes reflect that the board authorized the International officers to resolve the strike at Laurel. While the board never passed a resolution authorizing the imposition of a trusteeship, we do not think such a formal compliance with the constitution is necessary as long as it is clear beyond reasonable doubt from the record that the trusteeship was imposed with the actual approval of the board. We think that when the purpose of the trusteeship is as clearly proper as it was in this case, precise compliance with the labor organization's constitutional procedures is not necessarily required as long as there is substantial compliance consistent with the purposes of the Labor-Management Reporting and Disclosure Aet. Those purposes are the prevention of arbitrary imposition of trusteeships or the imposition of trusteeships for wrongful purposes. We are careful to note that the purposes of the Act demand that any variation in the procedures set forth in the labor organization's constitution be only slight and insignificant, as they were in this case.

*The Purpose of the Trusteeship.*

■ Section 302 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 462, allows a labor organization to establish a trusteeship over a subordinate body for several purposes, including "assuring the performance of collective bargaining agreements or other duties of a bargaining representative." We hold that the imposition of the trusteeship over Local 5–443 was for that very purpose and thus was authorized by the Act.

Local 5–443 was engaged in an illegal strike, one that violated the collective bargaining agreement in effect between the Union and Masonite and one that was unprotected by the National Labor Relations Act. The strike was held to be unlawful by the Mississippi Supreme Court and by the National Labor Relations Board. The International was threatened by a ten million dollar liability suit filed by Masonite and was itself convinced that the strike was unlawful. It is clear, then, that the International had a right to impose a trusteeship on the Local for the purpose of ending the illegal strike and assuring performance of the collective bargaining agreement. Professor Summers, in discussing the right of an international to control unlawful strikes by its member unions, has stated:

> It is so obvious that a union may punish its members for engaging in an unauthorized strike that the courts have never bothered to discuss the matter. A parent union may even revoke the charter of the local which engages in a wildcat strike and thereby expel all of the members in that local. Disciplining wildcat strikers may not only be a power but a positive duty of the union.

Summers, Legal Limitations on Union Discipline, 64 Harvard L.Rev. 1049, 1065 (1951). *See* Parks v. International Brotherhood of Electrical Workers, 4th Cir. 1963, 314 F.2d 886, 905.

■ Congress, too, must have thought that a labor organization should

be able to prevent or end a local strike that was in violation of a collective bargaining agreement since it specifically listed violation of such an agreement as an adequate purpose for the imposition of a trusteeship. 29 U.S.C.A. § 462. Actually, although Congress listed a few proper purposes for the establishment of trusteeships, it accepted the practical impossibility of formulating a precise definition of proper purpose, and thus "proper purpose" is broadly defined to include the use of a trusteeship in "otherwise carrying out the legitimate objects of [the] labor organization." By defining "proper purpose" so imprecisely, Congress deliberately left it largely to the courts to determine the legality of trusteeships. *See* Anderson, Landrum-Griffin and the Trusteeship Imbroglio, 71 Yale L.J. 1460, 1500 (1962). There were, however, two purposes for which trusteeships had sometimes been used that Congress particularly wished to prohibit: The looting of treasuries by the international's officers and the trustee, and the control of votes to help candidates win or maintain positions in international unions. Neither of those purposes, nor any other insidious purpose, motivated the imposition of the trusteeship in the present case. Indeed, all the evidence indicates that the purpose of the trusteeship was to terminate the strike by Local 5–443. That strike was called and continued without a vote of the membership in violation of the IWA constitution, was violative of the existing collective bargaining agreement, unprotected by the NLRA, laden with violence, and thus there was more than adequate reason for the imposition of the trusteeship.

*The Necessity of a Fair Hearing.*

We now come to the most difficult question presented in this case: Is a fair hearing necessary for the valid imposition of a trusteeship by a labor organization over a subordinate body? We hold that a fair hearing is necessary.

■ While trusteeships are normally used by national unions to prevent or eliminate malpractices in subordinate organizations and as a tool of efficient union administration, they can be, and have been, used as a tool by which national officers suppress local autonomy over union activities. *See* Levitan, The Federal Law of Union Trusteeship, in Symposium, Labor-Management Reporting and Disclosure Act of 1959 (Slovenko 1959). The disclosures of the McClellan Committee in the late 1950's convinced Congress that federal law should intervene to curb the misuse of trusteeships, but the solution was complicated by the realization that the trusteeship is also a necessary tool of proper union discipline. H.R. Rep. No. 741, 86th Cong., 1st Sess. 14–15 (1959); 105 Cong.Rec. 14989–90 (1959). Congress, in enacting the relevant portions of the LMRDA, attempted to ensure that an international would be able to impose a trusteeship on a local when necessary for a proper purpose, but that it would not be able to arbitrarily or capriciously impose its will on a subordinate body, or would not be able to establish a trusteeship for an insidious purpose. Thus it provided, inter alia, that a labor organization which assumes a trusteeship over a subordinate body should file periodic reports with the Secretary of the Labor, 29 U.S.C.A. § 461, that a trusteeship should be established and administered only in accordance with the constitution and bylaws of the labor organization, 29 U.S.C.A. § 462, and that a trusteeship should be imposed only for a proper purpose, *id.* Congress clearly intended to provide an orderly and fair procedure by which a labor organization could establish a trusteeship over a subordinate body, a procedure that would protect both the power of the central organization to exercise legitimate control over its components and the right of the subordinate bodies to be free from abusive use of that power.

One part of the statutory scheme that sets out the procedures to be followed in the imposition of a trusteeship is section

304(c), 29 U.S.C.A. § 464(c), which reads as follows:

> (c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified by a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. * * *

▉ While Congress did not specifically state that a fair hearing is required for the valid imposition of a trusteeship, we agree with the two other courts that have directly decided this point that the legislative history and general purposes of the Act indicate that Congress intended a requirement of a fair hearing to authorize or ratify the imposition of a trusteeship. Plentty v. Laborers' International Union of North America, E. D.Pa.1969, 302 F.Supp. 332; Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, D.Mass. 1966, 261 F.Supp. 433.

Under the common law prior to the passage of the LMRDA, a trusteeship imposed upon a subordinate body was invalid unless the subordinate body was granted a fair hearing. Plentty v. Laborers' Int. Union of No. America, *supra* 302 F.Supp. at 338. Congress was aware of this when it enacted the LMRDA, as can be seen from the following excerpt from a House report:

> The present rules of law applicable to union trusteeships furnish inadequate protection for two reasons. The legal theory applied by the courts is often inadequate. *A trusteeship will ordinarily be set aside unless the local is*

*given a fair hearing, including notice of the charges and an opporcunity to defend.* But if the forms of fair procedure are observed there appears to be little the courts can do and there are very few cases staying or upsetting trusteeships upon substantive grounds.

House Report No. 741, U.S. Code Congressional and Administrative News, 86th Cong., 1st Sess., 1959, Vol. 2 at pp. 2424, 2435–36 (emphasis added).

The purpose of the trusteeship provisions of the LMRDA was to prevent abuses of union trusteeships and to require disclosure of the reasons for union actions in matters touching the governance of local union affairs, and it would be contrary to that purpose to hold that a fair hearing is not required for authorization or ratification of a trusteeship over a local union, because to so hold would mean that in an important aspect, a union could more easily impose a trusteeship on a subordinate body after passage of the LMRDA than it could before. The Act was intended to create additional safeguards against the arbitrary or abusive use of trusteeships, not to remove those safeguards already in existence.

▉ Having determined that a fair hearing is necessary for the valid imposition of a trusteeship, we must now decide whether Local 5–443 was given a fair hearing by the International. A meeting of the IWA executive board was held on November 28, 1967, and appellees argue that this meeting constituted a fair hearing. Local president Jolly was at that meeting but he had no warning that the subject of a possible trusteeship over his union would be discussed at that meeting, and thus he could not possible have prepared an adequate defense to charges made against the local. Also, there apparently was no attempt at the meeting to present evidence or to make specific findings, and the meeting was handled no differently from other such board meetings. We believe a fair hearing implies at least the procedural requirements of notice of

the charges and the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal. Plentty v. Laborers' Int. Union of No. America, *supra*. The November 28 meeting did not satisfy these requirements and thus was not sufficient for the valid imposition of a trusteeship on Local 5–443.

The matter, however, does not end there, for we must determine whether a meeting of the IWA executive board held on November 12, 1968, eleven months after the appointment of a trustee, constituted a fair hearing and sufficient ratification of the trusteeship. On September 30, 1968, International President Roley wrote Local President Jolly a registered letter, reviewing the charges against the Local, the violations of the IWA constitution that were involved, and the history of the trusteeship procedure. All Local 5–443 members received copies. A special meeting was called for November 12, 1968, to give Jolly and other spokesmen for the Local "all reasonable opportunity desired to present * * * all facts, argument or other material concerning the charges." Jolly was invited to make any suggestions he desired concerning the convenience of such meeting, or its procedures. The meeting was held, and after a hearing on the issues, the executive board made fifty-two formal findings. The board expressly approved the previous action of the International president in imposing a trusteeship on Local 5–443. Since there was express ratification of the trusteeship after a fair hearing, we hold that the trusteeship was valid.[2]

## II.

Appellants argue that the supplemental bargaining agreement entered into between the International and Masonite on December 6, 1967 is invalid because the persons who purported to act for the International in the execution of the agreement were without authority to do so, and Masonite knew or had reason to know this. The agreement was signed by International President Roley and another IWA officer. Appellants' basic complaint is that the supplemental agreement was negotiated and executed without participation of the Local's negotiating committee.

The International Woodworkers of America was certified by the National Labor Relations Board as the exclusive bargaining representative for Masonite's Laurel employees on July 10, 1946, and has continuously served in that capacity since that time. The National Labor Relations Act specifically requires that such a representative be the exclusive representative for the employees it represents and that an employer bargain with no other party claiming representation rights. It is clear that the IWA was the exclusive bargaining agent for union employees at the Laurel plant, that recent bargaining agreements had been executed by the International "for and on behalf of" the members of Local 5–443, and that the supplemental bargaining agreement of December 6 inured to the benefit of the members of that local. It is also clear that the International's valid imposition of a trusteeship over the Local entitled it to enter into this type of favorable supplemental agreement in order to mitigate the ill effects flowing from the unlawful strike that the trusteeship was to terminate.

**2.** This holding, as it must be, is based on the facts of this case. The determination of whether a trusteeship has been authorized or ratified by a fair hearing is necessarily made on a case-by-case basis. For example, under some circumstances, a lapse of eleven months from the time that a trusteeship is imposed to the time that a fair hearing is held and ratification made, may be considered unreasonable and insufficient to fulfill the requirement of a fair hearing to authorize or ratify the imposition of a trusteeship. Under the facts of this case, however, we have decided that the eleven month lapse between appointment of the trustee and ratification by the executive board was not unreasonable and did not result in a denial of fundamental fairness to any of the parties involved.

For these reasons the supplemental bargaining agreement is valid. *See* International Longshoremen's & Warehousemen's Union v. Kuntz, 9th Cir. 1964, 334 F.2d 165; Local Union No. 12405, District 50, United Mine Workers v. Martin Marietta Corporation, 7th Cir. 1964, 328 F.2d 945; *see also* Ford Motor Company v. Huffman, 1953, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048.

Affirmed.