**LUGGAGE WORKERS UNION, LOCAL 167 by Iris Baldwin, Trustee Ad Litem**

v.

**INTERNATIONAL LEATHER GOODS, PLASTICS & NOVELTY WORKERS' UNION**

and

**Peter Donatello.**

**Civ. A. No. 3856.**

United States District Court,
D. Delaware.

Aug. 24, 1970.

Thomas G. Hughes and Frank O'Donnell, of O'Donnell, Hughes & Lowicki, Wilmington, Del., Alan R. Howe, of Pechner, Sacks, Cantor & Dorfman, Philadelphia, Pa., of counsel, for plaintiff.

John Biggs III, of Biggs & Battaglia, Wilmington, Del., Richard H. Markowitz, of Wilderman, Markowitz & Kirschner, Philadelphia, Pa., Max H. Frankle and Leonard Greenwald, of Frankle & Greenwald, New York City, of counsel, for defendants.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This action challenges the validity of a trusteeship imposed by the International Brotherhood of Leather Goods, Plastics and Novelty Workers' Union, AFL–CIO (the "International"), on its subordinate, Luggage Workers Union, Local 167 (the "Local"), plaintiff herein. The Local is an unincorporated labor organization located in Smyrna, Delaware. Iris Baldwin is President of the Local and she brings this action on its behalf as trustee ad litem. The International is an international labor organization with principal offices in New York City. Peter Donatello is an individual acting as trustee of the local pursuant to appointment by the International president.

The complaint asserts a violation of Title III of the Labor-Management Reporting and Disclosure Act of September 14, 1959, commonly known as the Landrum-Griffin Act, 29 U.S.C. § 401 et seq. (the "Act"). Section 304(a), 29 U.S.C. § 464(a), of the Act, confers jurisdiction on this Court.[1]

Plaintiff contends that the trusteeship is invalid because it was imposed in violation of two minimum standards established in Title III. The first is inclusion in the governing constitution or bylaws of the procedures which must be followed in establishing a trusteeship. The second is the holding of a fair hearing before a trusteeship is authorized or ratified.

Article XVII, Section 1 of the Constitution of the International Leather Goods, Plastics and Novelty Workers' Union provides for imposition of a trusteeship by the General Executive Board or Board of Directors if a local "fails to abide by its obligations under the International Union's Constitution or fails to abide by its obligations pursuant to applicable law in discharging such obligations either to the International Union or its members." It is not contended that the Constitution does more than establish authority for the use of trustee-

---

1. Plaintiff is not required to exhaust administrative remedies before the Secretary of Labor. Although some cases have required a complaint to the Secretary as a prerequisite to the right to sue in the district court, see Flaherty v. McDonald, 183 F.Supp. 300 (S.D.Cal.1960); Rizzo v. Ammond, 182 F.Supp. 456 (D.N.J. 1960), neither the language of the statute nor its legislative history indicates that Congress intended such a limitation. The original Kennedy-Ervin bill, S. 505, restricted suits for violations of Title III to those brought by the Secretary of Labor, as did the final Senate bill, S. 1555. The bill which came out of the Conference Committee and which was enacted rejected the language of Section 206 in the Senate bills and provided for suits by locals and individuals in addition to those by the Secretary.

ships. Defendants insist that under the Act, that is sufficient.

Section 302 of the Act, 29 U.S.C. § 462, places limitations on the right of labor organizations to place their subordinates in trusteeship.[2] It requires that in both the establishment and administration of trusteeships, the governing constitution be obeyed. It also limits the permissible purposes for trusteeships.[3] The section does not say, as it might have, that constitutions must contain procedures to be observed in establishing a trusteeship. Two courts have found such a requirement implied. United Bro. of Carpenters and Joiners of America v. Brown, 343 F.2d 872, 882 (10th Cir. 1965), Local No. 2, International Bro. of Telephone Workers v. International Bro. of Telephone Workers, 261 F.Supp. 433, 435 (D.Mass.1966).

It appears from the legislative history, however, that neither the proponents of the bill nor its critics sought to limit the right to impose trusteeeships to labor organizations whose constitutions set forth procedures for doing so. The drafters aimed their efforts at substantive rather than procedural abuses in the use of trusteeships. They were concerned with use of trusteeships "as a means of consolidating the powers of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization." Senate Report 187, Comm. on Labor and Public Welfare, 2 Congr. and Adm.News, 86th Congr. First Session, 1959, p. 2333. In his report,[4] Senator Kennedy noted that existing law was inadequate not because it did not guarantee the forms of fair procedure but because it did not provide for an attack upon the purpose for which trusteeships were imposed. 2 Congr. and Adm. News, supra, at p. 2333. The bill sought to place "limits on the reasons for which trusteeships can be imposed and the period for which they may be continued," being careful, however, "not to interfere with the necessary and fully legitimate use of trusteeships, including compliance with provisions of the union's constitution insofar as they are consistent with the standards of the act." Id.[5]

■ Although there is no indication that the Committee found that labor organizations were systematically violating their constitutions in their use of trusteeships, it is not difficult to understand Congress's insistence in Section 302 on obedience to the constitution as a minimum requirement. If the agreement which binds locals to the international contains restrictions, either procedural or substantive, on the right to establish trusteeships, adherence to those restrictions should be a condition of validity. Nowhere in the legislative history, however, including the numerous bills, amendments, debates and reports, does there appear a dissatisfaction with failure to require internationals to amend their constitutions or bylaws and spell out the procedures for imposing a trus-

---

2. Section 302 provides:
   "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

3. Presumably, the constitution could impose stricter limitations on purposes, and if

so, the constitutional limitations would control.

4. The relevant language in Senate Report 187 is repeated almost verbatim in the report of the House Committee on Education and Labor, House Report 741, 2 Congr. and Adm.News, 86th Congr., First Sess.1959, p. 2435.

5. For a good discussion of the uses and abuses of trusteeships prior to enactment of the Landrum-Griffin Act, see Note, Landrum-Griffin and the Trusteeship Imbroglio, 71 Yale L.J. 1460, 1466–73 (1962).

teeship. The Secretary of Labor, in his report to Congress in September, 1962, took the position that the Section did not require them to do so.[6]

Section 304(c), 29 U.S.C. § 464(c),[7] does not advance plaintiff's argument. That section provides a shifting presumption of validity for trusteeships established "in conformity with the procedural requirements" of the governing constitution and bylaws and "authorized or ratified after a fair hearing." This section, too, poses interpretative problems. Note, Landrum-Griffin and the Trusteeship Imbroglio, 71 Yale L. J. 1460, 1500–06 (1962). Plaintiff's position can only be sustained by finding in Section 304(c) an intent to limit the presumption of validity to trusteeships imposed under constitutions which go beyond the requirements of Section 302. There would thus exist a third status of trusteeships, neither presumed valid under Section 304(c) nor rendered invalid by Section 302, and the courts would have to apply some unannounced standard to determine their validity. Note, The Trusteeship Imbroglio, supra., at 1504; International Brotherhood of Electrical Workers, Local 1186 v. Eli, 307 F.Supp. 495, 501–502 (D.Hawaii 1969). Although the reference to "procedural" requirements in Section 304(c), absent in Section 302, might indicate a distinction between the standards imposed by the two sections, such an interpretation ignores the purpose of Title III of the Act and is not warranted by a fair reading of the statutory language.

■■ The Act is intended to provide relief against trusteeships imposed for improper purposes. The drafters were wary, however, of substituting their judgment too rigidly for that of responsible union officers and courts. They provided that if the procedural requirements of the constitution and bylaws are obeyed and a fair hearing held, trusteed locals will bear a heavy evidentiary burden on the purpose issue. Procedural regularity raises the presumption that the purpose was proper, and the trusteeship may only be upset upon "clear and convincing proof that [it] was not established * * * in good faith for a purpose allowable under Section 302." In the committee report to the Senate, Senator Kennedy said, "The purpose is to make it plain that an honest decision by the international officials is not to be overturned during the first 18 months of the receivership upon a question of fact or of degree or of judgment as to the necessity for imposing it." 2 Congr. and Adm.News, supra., at p. 2334.

■ The mechanism established contemplates three essential conditions of validity: adherence to the constitution, a fair hearing,[8] and a permissible purpose. If the first two are observed, the third is enshrined with a presumption the rebuttal of which requires a strong showing of bad faith and improp-

---

6. Union Trusteeships, Report to the Congress by the Secretary of Labor, 35–36 (1962). Commenting on Section 302, the Secretary said:

> "The Department has taken the position that the procedure to be followed in the establishment * * * of a trusteeship would not have to be set forth in the constitution or bylaws as a prerequisite for a valid trusteeship; but in all cases the procedure actually followed would have to be consistent with whatever provisions the constitution or bylaws do in fact contain." Id., at 36.

7. Section 304(c) provides, in pertinent part:

> "(c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with

the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed. valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. * * * "

8. Fair hearing as a requisite to validity is discussed in connection with plaintiff's contentions in that regard, infra., at pp. 505–506.

er purpose. The reference to "procedural" requirements in Section 304(c) distinguishes them from restrictions on other aspects of trusteeships which may be contained in union constitutions, restrictions on administration after establishment or indeed on the permissible purposes. Whether the reference was considered or accidental, there is nothing to indicate that Section 304(c) imposes such requirements as plaintiff urges,[9] and the Court concludes that failure to incorporate procedural requirements into the International constitution has no effect on the validity of the trusteeship challenged here.[10]

■ Section 2 of Article XVII of the International Constitution provides that the General Executive Board "may adopt such rules, regulations, and procedures as in its discretion are deemed appropriate to enforce the Trusteeship status of a Local Union. * * *" Plaintiff maintains that the Executive Board's failure to adopt such regulations deprives the International of the right to impose a trusteeship, that a trusteeship imposed before adoption of procedures by the General Executive Board is not "in accordance with the constitution."

■ It does not appear, however, that even if the Executive Board were required to act under the section, the regulations contemplated would relate to the imposition of trusteeships. They would be directed to enforcement, presumably events occurring after a valid trusteeship is in effect. But the section is not mandatory; it enables but does not require the General Executive Board to establish regulations. The failure to act is no bar to trusteeships which are otherwise legal.

■ Plaintiff's second contention, that a fair hearing is required to establish a valid trusteeship, does not appear more readily from the Act than the first. The weight of judicial authority favors the requirement, however, and finds it implied from the legislative history and purpose. Jolly v. Gorman, 428 F.2d 960 (5th Cir. 1970); Local No. 2, Int. Bro. of Telephone Workers v. Int. Bro. of Telephone Workers, 261 F.Supp. 433, 436 (D.Mass.1966); Plentty v. Laborers' International Union of North America, 302 F.Supp. 332, 338 (E.D.Pa. 1969). But see Int. Bro. of Electrical Workers, Local 1186 v. Eli, 307 F.Supp. 495 (D.Hawaii 1969), Note, The Trusteeship Imbroglio, 71 Yale L.J. at 1504 (1962).

Section 304(c) requires that a fair hearing be held to activate the presumption of validity, but nothing in Section 302 or elsewhere specifies the right to a hearing as a minimum condition of validity. The committee reports took note, however, that at common law trusteeships imposed without a fair hearing were set aside.[11] it should not lightly be assumed that Congress intended to create the enigmatic third status discussed above,[12] nor that it intended to relegate suitors to the state courts for protection of such a well-established right.[13] It is

---

9. The Secretary of Labor agrees. In his Report, cited above at n. 6, he said,
   "The language in section 302 is quite analogous to that in section 304(c) which permits the presumption of the trusteeship's validity to be invoked only when it has been established 'in conformity with the procedural requirements' of the constitution and bylaws of the organization assuming the trusteeship. Here again there is no indication that there must be detailed procedural requirements; all that is required is that the establishment be in conformity with any procedural requirements that may in fact exist." Report, at 36.

10. This conclusion is supported by the result in IBEW, Local 1186 v. Eli, 307 F. Supp. 495 (D.Hawaii 1969), although this Court declines to adopt in full the rationale or statutory analysis of that case.

11. Senate Report 187, 2 Congr. and Adm. News, supra., p. 2333; House Report 741, id. at 2436.

12. Page 504, supra.

13. Common law rights might still be vindicated in the federal courts, but relief would depend on the existence of federal jurisdiction at the outset. Since § 304 (a) limits jurisdiction to violations of the title, however, relief on the pendent claim

not only likely but logical that Congress assumed such results would not occur because fair hearings were essential. Just as nonadherence to the procedural requirements of the constitution would render trusteeships invalid under Section 302, failure to hold a fair hearing would be fatal under the common law standard incorporated in the Act.[14]

Since the plaintiff does not attack the purpose for which it was placed in trusteeship,[15] it is not necessary to inquire extensively into the factual background of the litigation.[16] In order to determine if the procedures followed accorded the Local a fair hearing, however, they must be set forth in some detail.

On February 26, 1970, the Board of Directors of the International passed a resolution placing the Local in trusteeship and appointing Peter Donatello as trustee. The Local received that resolution on February 28, 1970. Charles Feinstein, International President, sent a telegram on February 27, 1970, to Iris Baldwin and other officers of the Local, advising them of the appointment of the trustee and directing them to relinquish all books, records, and other properties to the trustee.

The resolution sets forth the basis for the trusteeship as follows:

" * * * the International Leather Goods, Plastics and Novelty Workers' Union, AFL–CIO, has been advised that certain officers and members of Local Union 167 have conspired and are conspiring with others to commit illegal and unlawful acts against the International and its membership, and

* * * on February 24, the aforementioned individuals acting in violation of the Constitution of this International Union have attempted to disaffiliate therefrom in violation of Article I, Section 13 and other provisions of the Constitution, and

* * * the International has substantial evidence that the aforementioned disaffiliation meeting was organized and effected so as to disfranchise an overwhelming majority of the Local's members, and

would be proper only when a claim for violation of the title was well pleaded. The range of circumstances when such a claim was pleaded but not proved, making relief on the common law claim necessary and proper, see United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), seems exceedingly small.

14. In his Report, cited above at n. 6, the Secretary of Labor observed:
"The Department believes that the provisions in section 304(c) are indicative of the standards of fairness that Congress felt public policy demanded in this area. * * * Therefore, it is felt that a union having vague constitutional provisions relative to procedures for the imposition of a trusteeship must at least hold a fair hearing before the imposition of a trusteeship or within a reasonable time thereafter.
This is so because the statute makes clear that a union having very detailed procedures could not impose a valid trusteeship without following its procedures. Such procedures necessarily would include a fair hearing. Therefore,

if the Department limited the scope of the 'fair hearing' clause in section 304 (c) solely to the matter of the '18-month rule of presumptive validity,' it would be discriminating against those organizations that in good conscience have specified the procedures to be used." Report, at 36.

15. The complaint alleged an improper purpose, but no proof was offered on that issue and plaintiff's counsel conceded orally that its attack was based on the contentions discussed herein.

16. The dispute involves a matter of internal union discipline. It arises out of efforts by the Local to disaffiliate following alleged misconduct by the current International administration. The validity of the disaffiliation is now before this Court by the Local's counterclaim to an action brought by the International and removed here from the Delaware Court of Chancery, Civil Action 3877. The trusteeship was imposed following transfer of Local funds to an account inaccessible to International representatives and alleged violations of the constitution in the disaffiliation procedure.

* * * there is substantial evidence indicating that the assets, properties, monies and other Local valuables are about to be or have been unlawfully dissipated or expended for wrongful purposes, and

* * * substantial evidence indicated that there is an overwhelming majority of the Local's membership desirous of continuing their affiliation with the International and have been denied this right, and

* * * the above acts and other acts of certain officers and members of Local 167 will cause great numbers of workers to lose valuable rights and or benefits accruing to them by virtue of the International Constitution, and relevant collective bargaining agreements, and

* * * the aforementioned officers and certain members continue to evidence their unwillingness to comply with the International Constitution."

On March 4, 1970, Harry Frankel, Secretary-Treasurer of the International, sent a telegram to the Local officers, stating, in pertinent part:

"You are directed to appear before the Board of Directors at 2:00 P.M. at which time you will be given the opportunity to be heard and all of the circumstances and events giving rise to and bearing upon the trusteeship will be gone into and reviewed. After all matters are reviewed and you have been heard, a decision will be made as to what further proceedure will be followed.

The purpose of this hearing is to protect the interest of each and every member in the assets, property and collective bargaining agreement negotiated on their behalf by our International Union."

Iris Baldwin replied by telegram of March 9, 1970, stating that the Local officers would not attend the meeting

scheduled the next day for the following reasons:

"1. Alleged trusteeship is illegal under Landrum-Griffin Law and International Constitution.

2. International Constitution fails to provide procedure for imposition of trusteeship in violation of Landrum-Griffin Law.

3. Alleged trusteeship illegally imposed on February 27, 1970 without the fair hearing required by Landrum-Griffin Law.

4. Telegram of March 4, 1970 is not proper notice of hearing since it sets forth no specific charges which Local Union 167 is to answer, thereby denying the Local Union the opportunity to prepare a defense to the illegal action taken by the International Union, and, further, the said telegram fails to state that the International Union is prepared to offer evidence and witnesses in support of the reasons for imposing the alleged trusteeship and, further, the said telegram fails to state that the Local Union will be afforded the opportunity to examine and cross examine witnesses and present evidence in rebuttal.

5. The alleged notice by telegram of March 4, 1970 is defective since it does not afford the Local Union sufficient time to prepare for alleged hearing on March 10, 1970.

6. The alleged notice by telegram of March 4, 1970 is defective since it is unreasonable and burdensome to require Local Union Officers (all female) to travel from Smyrna, Delaware to New York, New York when the International Union has the power to schedule any hearing at a place more convenient to Local Union 167."

Harry Frankel sent another telegram to Iris Baldwin on March 13, 1970, advising that the Local officers were in default for their failure to appear, that the Board of Directors voted at the

meeting to continue the trusteeship, and that a hearing was scheduled in Dover, Delaware, on March 23, 1970. Mrs. Baldwin responded that the Local officers would not appear in Dover for the first four reasons set forth in her earlier telegram and further because the institution of the instant action made such appearance useless.

The International Board of Directors held the hearing as scheduled in Dover, at which no Local representatives appeared. The Board voted, on the basis of facts found there, to continue the trusteeship.

Defendants assert that plaintiff should not be heard to object to the fairness of a hearing which its officers declined to attend; defendants should not be penalized, they insist, if a right which plaintiff waived was incompletely observed. Nevertheless, the right to a fair hearing implies more than an opportunity to be heard before an official body. It includes written charges and fair notice of the hearing so that the Local can prepare its defenses. Mixed Local of Hotel and Restaurant Employees Union v. Hotel and Restaurant Employees International Alliance, 212 Minn. 587, 4 N.W.2d 771 (1942); Underwood v. Maloney, 152 F.Supp. 648 (E.D.Pa.1957), rev'd. on jurisdictional grounds, 256 F.2d 334 (3d Cir. 1958); Senate Report 187, 2 Congr. and Adm. News, supra., at p. 2333, House Report 741, id., at p. 2436. The charges must state the acts upon which the Interna-

tional relies, the manner in which they violate the constitution or otherwise justify the trusteeship, and whenever possible, the persons who committed them.[17] Vague references to constitutional violations or misconduct are not adequate.

Neither the resolution adopted by the International Board of Directors and sent to the Local officers nor the telegram directing them to appear at the hearing in New York is sufficiently specific. Neither informs the Local in what respect it has violated the constitution nor what the evidence is that funds had been or were about to be expended for an unlawful purpose. It is not a function of the notice requirement to raise fair hearings to the level of judicial proceedings and to impose rigid rules of pleading, but, especially when the hearing takes place after the trusteeship is imposed, the Local is entitled to be informed of the acts which the International asserts invoke the right to impose a trusteeship.[18]

The Local challenged the notice given it at the first opportunity. Compare IBEW, Local 1186 v. Eli, supra, 307 F.Supp. at 509. The International officers did not state the charges more specifically before either the New York hearing or the one held in Dover. Although the Local officers chose not to attend the hearings at their peril, the Court concludes that the defect in notice rendered the trusteeship invalid regardless of what took place at the hearings and that the failure to attend does not

---

17. The requirement is of course limited by practicalities and whether or not it is observed will often depend on the facts of the case. If International officers have been in contact with a local over a period of time and have attempted, without success, to cause the local to cease specific illegal or unconstitutional conduct, it could hardly be urged that the local was uninformed as to the reason or justification for the trusteeship. See Jolly v. Gorman, 304 F.Supp. 15 (S.D.Miss.1969). Awareness, as in the instant case, that

International officers are disturbed by events at the local level is not notice, however. It will be a rare case when a local finds itself in trusteeship without some indication in advance that relations with the International are strained.

18. Relevant parts of Article XVII, Section 1, of the International constitution are quoted at p. 502, supra. Proper notice should set out the manner in which the Local violated its obligations under the constitution or existing law.

bar the Local from seeking injunctive relief here.

 Although not vigorously urged by the plaintiff, another aspect of the proceedings deserves comment. The fair hearing must be directed specifically to ratification of the trusteeship. Although terms applied do not control when the substance of the law is observed, the Court notes with concern that none of the communications to the Local indicate that the initial decision to impose a trusteeship and the authority therefor would be called into question at the hearings. The Local was presented with a *fait accompli* and given no assurance that the basic decision to impose the trusteeship would be reviewed. The hearing was entitled and referred to as "Special hearing into the affairs of Local 167," and the hearing board did not ratify the trusteeship but voted to continue it. If the International chooses to hold another hearing, as provided below, according proper notice to the Local, the ultimate issue considered must be ratification of the trusteeship.[19]

The parties will present an order providing that an injunction shall be issued as prayed for by plaintiff restraining the enforcement of the trusteeship. If defendants represent through counsel, however, that the International desires to hold a fair hearing in accordance with this opinion in not less than thirty days and at least ten days after delivery of written charges to the Local, the order shall provide that the operation of the injunction shall be suspended for thirty days. In that event, the order shall further provide that if such hearing is not held within thirty days, defendants shall be permanently enjoined from enforcing any aspect of the trusteeship.[20]

---

19. See Plentty v. Laborers' International Union of North America, supra, 302 F. Supp. at 340.

20. This matter was heard on plaintiff's motion for preliminary injunction. By stipulation at oral argument, the parties agreed that the Court's determination on the record before it at that time should be a final disposition of the action.