**Joseph T. HANSEN, Trustee of Local Union P–9 United Food and Commercial Workers International Union, AFL–CIO & CLC, Plaintiffs,**

v.

**James V. GUYETTE, Suspended President of Local Union P–9, Lynn Houston, Floyd Lenoch, Peter Winkels, John Weis, Carl Pontius, Kathryn Buck, Jim Retterath, Suspended Executive Board Members of Local P–9, Defendants.**

**LOCAL P–9, UFCW, a labor organization and unincorporated association, James Guyette, Lynn Huston, Kathryn Buck, Peter Winkels, James Retterath, John Weis, Floyd Lenoch, and Carl Pontius, in their individual and official capacities as members of the Executive Board of Local P–9, and on behalf of 975 striking members of Local P–9, Plaintiffs,**

v.

**William H. WYNN, Jay H. Foreman, Jerry Menapace, William Olwell, Alan Lee, Lewie Anderson, Joseph Hansen, John Mancouso, and Allen Zack, in their individual and official capacities; and United Food and Commercial Workers International Union, a labor organization and unincorporated association, Defendants.**

Nos. Civ. 3–86–437, Civ. 3–86–0490.

United States District Court,
D. Minnesota,
Third Division.

June 2, 1986.

See also 636 F.Supp. 902.

Roger A. Jensen, Peterson, Bell, Converse & Jensen, St. Paul, Minn., (Harry Huge, Gary K. Harris, James E. Pfander, Rogovin, Huge and Lenzner, George R. Murphy, Robert E. Funk, Jr., Washington, D.C., of counsel), for plaintiffs.

Emily Bass, Margaret Winter, Winter & Bass, New York City, Krause & Rollins, Minneapolis, Minn., Ronald L. Rollins, Minneapolis, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, District Judge.

The basic issue on motions for preliminary injunctions in each of these cases is whether the UFCW International Union had authority to appoint a trustee over Local P–9's affairs. The parties submitted

memoranda and affidavits and presented oral argument on June 2, 1986.

The International Union, after a hearing, placed Local P–9 in trusteeship on May 7, 1986, because P–9 had violated the UFCW Constitution by disobeying a directive of the International Executive Committee. The March 13, 1986, directive ordered P–9 to cease its strike with Hormel, to cease its unsanctioned product boycott, and to cease its roving picket line activities. The directive was not followed and P–9 refuses to recognize the trusteeship.

The records in these cases reflect a sharp, long-time conflict between the International's President William Wynn and Vice-President Lewie Anderson, on the one hand, and P–9 President James Guyette and corporate campaign leader Ray Rogers, on the other. According to the affidavit of James Guyette, the two groups hold markedly different views on the making of certain concessions to Hormel, maintaining the so-called "Hormel chain" in wage and conditions of employment negotiations, the wisdom of conducting a "corporate campaign" against Hormel, and other issues. Bitter exchanges have taken place between members of the two groups. The International was accused of bad faith, and Guyette and Rogers were called inexperienced and charged with leading P–9 members to "mass suicide."

But this hearing is not to receive evidence or arguments about the strike, on how it can be, or should have been, conducted. The basic issue here is a *contract*, not a *labor* dispute. The question is whether the International had authority under its constitution and federal labor law to appoint the trustee. An examination of the thirty page UFCW International Constitution, which is a contract between the International and its local unions and members, reflects a vesting of controlling authority in the International, vis-à-vis the local subordinate bodies, to shape, supervise, and execute almost every part of labor activity in which the International and its chartered bodies are involved.

The UFCW Constitution provides that collective bargaining contracts must be approved by the International President, absent which they are "void and without effect." UFCW Int'l Const. art. 23(a). The International, through its Executive Board, is solely impowered to authorize strikes or other economic action, order cessation of work, and make agreements covering hours, wages, and conditions of employment. *Id.* arts. 8(B), 23(E). The International President authorizes issuance of charters and interprets the constitution, *id.* art. 10(E)(1); local unions are required to abide by and conform to the constitution and laws, *id.* art. 31(A), 32(C); and every member agrees to subject himself to the International's Code of Discipline, *id.* art. 25(A).

Particularly important to the immediate issue before us, the UFCW Constitution specifically authorizes the imposition of a trusteeship upon a local union "[w]henever in the judgment of the International Executive Committee such action is required." *Id.* art. 9(H)(1). This broadly expressed grant of authority may be exercised for, among other purposes, enforcing compliance with directives of the International. *Id.; see also* art. 8(b). That was the purpose here.

These provisions of the UFCW Constitution are given the force of law in the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 461–66. The Act sets out proper purposes in establishing trusteeships to prevent arbitrary or wrongful imposition of trusteeships. *Jolly v. Gorman,* 428 F.2d 960, 967 (5th Cir.1970). Section 302 of the Act permits establishing and administering a trusteeship only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body. 29 U.S.C. § 462. A trusteeship for the purpose of carrying out the legitimate objects of the labor organization is proper. *Id.*

The record shows compliance by the International's officers with federal law and with the constitution's procedural due process requirements. *See* UFCW Int'l Const.

art. 9(H)(3). There is a strong probability that the International will prevail on the merits. The public interest and a weighing of the respective harms strongly favors a grant of relief to the International. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

We conclude that since Local P–9 did not comply with the International's directive to cease its strike against Hormel or to cease its unsanctioned product boycott or to cease its roving picket line activities, the International acted within its authority in appointing the trustee to manage P–9's affairs, and trustee Hansen is legally authorized to act as such.

Based on the affidavits, the submitted memoranda, oral argument, and all files, records, and proceedings in these and related cases, we make the following pursuant to Federal Rule of Civil Procedure 65(d):

## FINDINGS OF FACT

1. Local Union P–9, United Food & Commercial Workers International Union (Local P–9) is a chartered local union affiliate of the UFCW International Union (International). Both entities are labor organizations representing employees in an industry affecting commerce.

2. The UFCW International Constitution sets the terms of membership in the International and governs the relationship between the International and the local unions.

3. On August 17, 1985, Local P–9 commenced a strike against George A. Hormel & Co.'s Austin, Minnesota plant (Hormel). Local P–9 sought and obtained International sanction of the strike. The International declined to sanction a product boycott or roving picket lines.

4. In October 1985, Local P–9's request for approval of a Hormel product boycott and roving picket lines to other Hormel plants was denied by the International.

5. Notwithstanding the absence of International sanction, and in connection with its strike against Hormel, Local P–9 extended its picket lines to Hormel plants in Fremont, Nebraska; Ottumwa, Iowa; Dallas, Texas; and Algona, Texas, where UFCW local unions represent employees. Over five hundred workers at the Ottumwa and Fremont plants were discharged or replaced for honoring Local P–9's picket lines.

6. Notwithstanding the absence of International sanction, and in connection with its strike against Hormel, Local P–9 publicly announced and called for a nationwide boycott of Hormel products in December 1985, or shortly thereafter.

7. On January 13, 1986, Hormel announced its intention to reopen its Austin, Minnesota plant. Thereafter, Hormel implemented its alleged final collective bargaining offer and began to hire workers. Of the approximately 1400 employees at the Austin plant that Local P–9 represented before the strike, approximately 500 returned to work at the Austin plant and approximately 500 have been permanently replaced.

8. On March 13, 1986, the International's Executive Committee (IEC) issued a directive to Local P–9 withdrawing strike sanction and ordering Local P–9 to cease the strike and related activities against Hormel. The IEC specifically stated that its primary concern is the preservation of Local P–9 members' jobs and their union. Local P–9's appeal from the directive was denied.

9. Local P–9 continued its strike and strike related activities after the International withdrew sanction of the strike. *Sharp v. Local No. P–9*, Civ. No. 3–86–363 (D.Minn. Apr. 23, 1986); *Local No. P–9 and Geo. A. Hormel & Company*, JD–125–86, at 13 & n. 18 (NLRB May 22, 1986).

10. On March 24, 1986, the International noticed a hearing to all Local P–9 members on the issue of whether Local P–9 should be placed in trusteeship pursuant to article 9(H) of the UFCW Constitution for violating the March 13th directive. The hearing date was continued to April 14, 1986, on the request of Local P–9. The UFCW Constitution authorizes imposition

of a trusteeship before a hearing. UFCW Const. art. 9(H)(1).

11. On April 1, 1986, the International Executive Committee appointed Raymond B. Wooster, a twenty-five year UFCW member and union representative, as the hearing officer. In carrying out his responsibilities, Hearing Officer Wooster provided the parties with procedural rules, relevant federal statutes, and UFCW Constitution provisions. He set the place for the hearing in Minneapolis, Minnesota, allowing seating for thirty to fifty Local P–9 members.

12. From April 14–16, 1986, Hearing Officer Wooster conducted the hearing. The parties had an opportunity to examine and cross-examine witnesses under oath and to present other evidence as to whether Local P–9 had complied with the International's March 13th directive described in paragraph 8 above. The parties received daily transcripts of the proceedings and submitted post-hearing written statements summarizing the evidence and arguments.

13. On May 5, 1986, Hearing Officer Wooster issued his report, finding that Local P–9 had failed to comply with the March 13th directive and recommending that Local P–9 be placed in trusteeship for that reason.

14. On May 7, 1986, the International Executive Committee issued a decision and order, placing Local P–9 in trusteeship for violating the International's March 13th directive, and appointing Joseph T. Hansen as trustee of Local P–9. By letter dated May 7, 1986, all officers and members of Local P–9 were notified of the trusteeship.

15. As trustee, Joseph T. Hansen is authorized by the UFCW Constitution to take immediate charge of Local P–9's affairs and has the right, upon demand, to all assets and records for the period that he is in charge, to be held in trust for the benefit of Local P–9 members. UFCW Const. art. 9(H)(2)(b).

16. When the trusteeship was imposed, Local P–9 officers were suspended from office and their functions passed to the trustee. UFCW Const. art. 9(H)(2)(c).

17. On May 9, 1986, this court issued a temporary restraining order enjoining Local P–9 from removing P–9 records from its Austin headquarters and transferring assets from P–9 accounts. In addition, this court directed defendant Kathryn L. Buck and defense counsel "forthwith to communicate this order to all defendants and promptly to file evidence of compliance with this direction." *Hansen v. Guyette*, Clerk's entry Nos. 6–12.

18. To date, Local P–9, through its officers, agents servants and employees, has engaged in the following acts in defiance of the International and the trustee's instructions and directives:

a. failing and refusing to comply with the March 13, 1986, directive ordering Local P–9 to cease its unauthorized strike and related activities against Hormel and thereby has restrained and coerced Hormel employees (see paragraph 9 above);

b. failing and refusing to comply with the trusteeship and with trustee Hansen's directions to turn over Local P–9 books, records, assets, property and premises to authorized representatives of the International; and

c. threatening, harassing, and intimidating authorized representatives of the International. Such conduct included the following:

(i) threats of violence from suspended Local P–9 Vice President Lynn Huston and other agents of Local P–9 directed toward deputy trustees Kenneth J. Kimbro and Jack Smith, agents of the International;

(ii) mass demonstrations at the International office that deputy trustees Kimbro and Smith established in Austin, Minnesota; and

(iii) patrolling and surveillance of such International office with an object of intimidating deputy trustees Kimbro and Smith.

19. Based on the findings in the preceding paragraph, it may fairly be anticipated

that, unless enjoined, Local P–9 and its officers, agents, servants, and employees will continue to threaten, harass and intimidate the agents of the International with the purpose of obstructing the orderly implementation of the trusteeship.

20. One may finally infer that unless trustee Hansen obtains immediate possession, custody and control of the books, records, assets, property and premises of Local P–9. Hansen will be unable to reconstruct the finances of Local P–9 and will be incapable of discharging his duties as trustee.

## CONCLUSIONS OF LAW

1. These actions allege violations of a contract, the UFCW International Constitution, between a labor organization and a subordinate affiliate representing employees in an industry affecting commerce, over which this court has jurisdiction. 29 U.S.C. § 185(a), (c).

2. A hearing complying with the UFCW Constitution's provisions preceded imposition of the trusteeship of Local P–9 by the International. *Jolly v. Gorman,* 428 F.2d 960, 966–67 (5th Cir.1970); UFCW Const. art. 9(H)(3).

3. The UFCW Constitution and federal law authorize establishment of trusteeships for carrying out the legitimate objects of the International, 29 U.S.C. § 462; UFCW Const. art. 9(H)(1).

4. The International Executive Committee's judgment to impose a trusteeship was not arbitrary and capricious, *Jolly v. Gorman,* 428 F.2d 960, 964–67 (5th Cir.1970); 29 U.S.C. § 462; UFCW Const. arts. 9(H)(3)(i), and Local P–9 has not provided adequate proof that the trusteeship was not imposed in good faith, *National Association of Letter Carriers v. Sombrotto,* 449 F.2d 915, 921 (2d Cir.1971).

5. The International's decision to impose a trusteeship of Local P–9 is entitled to a statutory presumption of validity. 29 U.S.C. § 464(c).

6. There is a substantial probability that the International will prevail at trial.

*Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981).

7. The trustee is legally obligated to hold Local P–9 property and assets in trust for the benefit of the membership, 29 U.S.C. §§ 461–66; UFCW Const. art. 9(H)(2)(b). Accordingly, Local P–9 will suffer no cognizable harm by the trusteeship.

8. The trustee has been unable to perform his functions, on behalf of Local P–9 members, causing irreparable harm. 29 U.S.C. § 461; UFCW Const. art. 9(H)(2).

9. The public interest is best served by implementation of the trusteeship pending trial on the merits.

Based on the foregoing,

IT IS ORDERED that:

1. The motion by Joseph T. Hansen and the UFCW International Union for a preliminary injunction is granted.

2. The motion by Local P–9 for a preliminary injunction enjoining implementation of the trusteeship of Local P–9 is denied.

IT IS FURTHER ORDERED that:

Local P–9, its officers, executive board members, agents, servants, employees, and attorneys are directed: forthwith to recognize Joseph T. Hansen as the legally appointed trustee of Local P–9 and to deliver to him custody and control of all Local P–9's assets and to permit him peaceably to manage them and to conduct Local P–9's affairs as trustee.

This preliminary injunction shall remain in full force and effect until further order of the court.

Local P–9's counsel is directed to communicate this order forthwith to all suspended officers and to all members of Local P–9 and to file promptly evidence of compliance with this direction.