814 F.2d 547
 124 L.R.R.M. (BNA) 3161, 106 Lab.Cas. P 12,284
 Joseph T. HANSEN, Trustee of Local Union P-9, United Food
and Commercial Workers International Union, Appellees,
v.
James V. GUYETTE, Suspended President of Local Union P-9,
Lynn Huston, Floyd Lenoch, Peter Winkels, John Weis, Carl
Pontius, Kathryn Buck, Jim Retterath, Suspended Executive
Board Members of Local P-9, Local Union P-9 United Food and
Commercial Workers International Union, Mildred Butz, Cindy
Rue, Local Union P- 9 United Support Group, P-9 Emergency
and Hardship Fund, P-9 Legal and Defense Fund, Adopt A P-9
Family Fund, Appellants.
LOCAL P-9, UFCW, James V. Guyette, Lynn Huston, Kathryn
Buck, Peter Winkels, James Retterath, John Weis,
Floyd Lenoch, Carl Pontius, Appellants,
v.
William H. WYNN, Jay H. Foreman, Jerry Menapace, William
Olwell, Alan Lee, Lewis Anderson, Joseph Hansen,
John Mancouso, Allen Zack, United Food
and Commercial Workers
International Union,
Appellees.
 No. 86-5262.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1986.
Decided March 25, 1987.
 
 Emily Bass, New York City, for appellants.
 Harry Huge, Washington, D.C., for appellees.
 Before ROSS, JOHN R. GIBSON and FAGG, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 This is an appeal from a district court order granting a preliminary injunction to enforce a trusteeship imposed by the United Food and Commercial Workers International Union (International) on its chartered affiliate, Local P-9, and denying the Local's motion for a preliminary injunction enjoining the trusteeship. 636 F.Supp. 907. The two issues presented on appeal are whether the district court[1] erred in concluding that the trusteeship was validly imposed in accordance with the UFCW International Constitution and the applicable federal labor laws, and whether the district court had jurisdiction to impose the injunction. We affirm.
 
 
 2
 The district court made the following factual findings, which are not challenged by the Local. On August 17, 1985, Local P-9 commenced a strike against Hormel at the plant in Austin, Minnesota. Local P-9 sought and obtained the International's sanction of the strike as required by the UFCW Constitution, the document that sets forth the terms of membership in the International and governs the relationship between the International and the local unions. The International declined, however, to sanction a product boycott or roving picket lines. Despite this lack of approval, Local P-9 extended its picket lines to Hormel plants in Fremont, Nebraska; Ottumwa, Iowa; and Dallas and Algona, Texas. Other UFCW local unions represent the employees at these plants. Over 500 workers at the Ottumwa and Fremont plants were discharged or replaced for honoring Local P-9's picket lines. Local P-9 also initiated a nationwide boycott of Hormel products, notwithstanding the lack of International sanction.
 
 
 3
 On January 13, 1986, Hormel announced that it would reopen its Austin, Minnesota plant. The Company implemented its alleged final collective bargaining offer and began to hire workers. Of the approximately 1,400 employees at the Austin plant that Local P-9 represented before the strike, approximately 500 returned to work and approximately 500 were permanently replaced.
 
 
 4
 On March 13, 1986, the International's Executive Committee issued a directive to Local P-9 withdrawing strike sanction, ordering Local P-9 to cease the strike and related activities against Hormel, and stating that the International's primary concern is the preservation of Local P-9 members' jobs and their union. Local P-9's appeal from the directive was denied. The Local, however, continued its strike and strike-related activities.
 
 
 5
 The International then notified all Local P-9 members of a hearing on the issue of whether Local P-9 should be placed in trusteeship pursuant to article 9(H) of the UFCW Constitution for violating the March 13 directive. The International Executive Committee appointed a hearing officer who provided the parties with procedural rules, relevant federal statutes, and UFCW constitutional provisions. A three-day hearing was conducted in which the parties had an opportunity to examine and cross-examine witnesses under oath and to present other evidence as to whether Local P-9 had complied with the International's March 13 directive. The parties received daily transcripts of the proceedings and submitted post-hearing written statements summarizing the evidence and arguments. After the hearing, the hearing officer issued his report, finding that Local P-9 had failed to comply with the March 13 directive and recommending that Local P-9 be placed in trusteeship.
 
 
 6
 After receiving this report, the International Executive Committee issued a decision and order, placing Local P-9 in trusteeship for violating the International's March 13 directive, and appointing Joseph T. Hansen as trustee of Local P-9. The Local refused to comply with either the March 13 directive or the directions of Mr. Hansen, and continued to threaten, harass, and intimidate authorized representatives of the International.
 
 
 7
 Based on these facts and a consideration of the UFCW Constitution and the requirements of the Labor-Management Reporting and Disclosure (Landrum-Griffin) Act of 1959, 29 U.S.C. Secs. 461-466 (1982), the district court concluded that the trusteeship had been validly imposed, that there was a substantial probability that the International will prevail at trial, that the balance of harms weighed in favor of the International, and that the public interest was best served by implementing the trusteeship. Accordingly, the court granted the International's request for a preliminary injunction.
 
 I.
 
 8
 In reviewing the district court's order granting the preliminary injunction, our limited task is to determine whether the court abused its discretion. Olin Water Servs. v. Midland Research Laboratories, Inc., 774 F.2d 303, 307 (8th Cir.1985); Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 592 (8th Cir.1984). We do not "pass final judgment on the underlying issues, but only * * * ensure that the injunction did not improperly issue on the basis of any clearly erroneous findings of fact or any clear error on an issue of law that may have affected the ultimate balancing of the Dataphase factors."[2] Olin Water Servs., 774 F.2d at 307. Since Local P-9 does not claim any error in the district court's findings of fact, our task is further narrowed; we need only determine whether there was any clear error of law that might have affected the balancing test. We also observe under the Landrum-Griffin Act trusteeships imposed after a fair hearing are presumptively valid, and the Local could overcome this presumption only upon clear and convincing proof in the district court of improper purpose or bad faith. 29 U.S.C. Sec. 464(c).
 
 
 9
 The crux of Local P-9's argument is that, first, the International had no authority under the UFCW Constitution to issue the directive requiring the Local to cease its strike and strike-related activities, and, second, even if the constitution granted such power, ending a strike is not a permissible purpose under the Landrum-Griffin Act because it interferes with local members' statutory right to strike. We address each contention in turn.
 
 A.
 
 10
 The district court concluded that the UFCW Constitution is a binding contract between the International and its local unions and members; the Local does not dispute this conclusion. The UFCW Constitution provides that local unions must obtain the authorization of the International Executive Committee before engaging in a strike or other economic measures. UFCW Const., art. 23(E)(1), Appendix, Vol. 1 at 19. The hearing officer and district court found, and Local P-9 does not dispute, that the Local conducted a nationwide boycott and operated roving picket lines despite the International's refusal to authorize these activities. The Local also continued its strike against Hormel after the International withdrew strike sanction. In essence, the Local did not comply with the UFCW Constitution. Article 9(H)(1) of the UFCW Constitution tracks the language of the Landrum-Griffin Act[3] and authorizes the International to impose a trusteeship, among other purposes, to "carry out the legitimate objectives of the International Union, including the enforcement of compliance with * * * the Constitution or laws of the International Union." Id., art. 9(H)(1), App. Vol. 1 at 8.
 
 
 11
 The Local attempts to avoid the clear meaning of these provisions by focusing on other constitutionally available methods by which the International may control the bargaining strategy of the locals. The two options the Local identifies are (1) seeking to become the exclusive bargaining agent for the Austin unit or (2) invoking the procedures in article 23(D)(7) to create a "synthesized" unit. Appellants' Brief at 25-26. The Local contends that these are the only methods by which the International may halt the strike. However, these two methods are available to the International even when the Local has not violated any constitutional provision. When, as in this instance, the Local's activities are unauthorized, and therefore in violation of the agreement between the International and the Local, the International has the additional option of imposing a trusteeship. In light of articles 23(E)(1) and 9(H)(1), the district court did not err in concluding that the trusteeship was valid under the UFCW Constitution.
 
 B.
 
 12
 Next, Local P-9 argues that the trusteeship was not imposed for a valid purpose under the Landrum-Griffin Act. Landrum-Griffin places limited restrictions on both the purposes and the length of a trusteeship. See 29 U.S.C. Secs. 462, 464. Nonetheless, in enacting Landrum-Griffin Congress recognized that, generally, trusteeships "are among the most effective devices which responsible international officers have to insure order within their organization" and, therefore, was "careful not to interfere with the necessary and fully legitimate use of trusteeships, including compliance with provisions of the union's constitution insofar as they are consistent with the standards of the act." S.Rep. No. 187, 86th Cong., 1st Sess., pt. III, reprinted in 1959 U.S.Code Cong. & Admin.News 2318, 2333; see also Jolly v. Gorman, 428 F.2d 960 (5th Cir.1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971).
 
 
 13
 Section 302 of the act broadly describes the allowable purposes for establishing a trusteeship:
 
 
 14
 Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organizations.
 
 
 15
 29 U.S.C. Sec. 462.
 
 
 16
 Local P-9 does not point to any language in the Act that precludes termination of an unauthorized strike from being the "legitimate object[ ]" of a trusteeship. Instead, the Local reads the National Labor Relations Act, 1947, 29 U.S.C. Sec. 157 (1982), as imposing an additional limitation on what may be considered a proper purpose under Landrum-Griffin. The Local points out that section 7 of the Act guarantees union members the right to bargain collectively through representatives of their own choosing. Id. Sec. 157. The Local reasons that because it was certified as the exclusive bargaining agent, as provided for in section 9 of the Act, Id. Sec. 159, the International is prohibited from "dictating the strategy that the Local must follow," Appellants' Brief at 8, and "the officers and members of the Local were fully within their rights on and after March 13, 1986 in continuing to engage in strike, boycott and allied picketing activities." Appellants' Reply Brief at 10.
 
 
 17
 As we have already observed, the UFCW Constitution is a binding contract: in agreeing to abide by and conform with all of the provisions of the constitution and laws of the International, UFCW Const., art. 32(C), App., Vol. 1 at 26, Local P-9 relinquished the right to engage in unauthorized strike-related activities. Moreover, the terms of the UFCW Constitution are clearly and unmistakably expressed, and the acceptance of those provisions constitutes a valid limitation on the Local's statutory right to strike. See Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 707-08, 103 S.Ct. 1467, 1476-77, 75 L.Ed.2d 387 (1983). In essence, when Local P-9 voluntarily affiliated with the International, it bargained away a measure of control over its activities in exchange for the strength it received. See Parks v. Int'l Bhd. of Elec. Workers, 314 F.2d 886, 907 (4th Cir.) cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). Under the terms of its contract with the International, Local P-9 did not have unfettered discretion in choosing its bargaining strategy. When Local P-9 persisted in conducting the unauthorized strike and strike-related activities, the International acted within the scope of its authority in issuing the directive.[4] The district court found no bad faith purpose in the International's action, but determined that it was simply an effort to ensure compliance with the constitution.
 
 
 18
 While the effect of this trusteeship, as with any trusteeship, is that the trustee, rather than the suspended local officers, acts on behalf of the local, Local P-9 remains the exclusive bargaining agent. Thus, we find no conflict with sections 7 and 9 of the National Labor Relations Act, and no error in the district court's determination that the trusteeship furthered the "legitimate objects" of the International within the meaning of the Landrum-Griffin Act.
 
 
 19
 Local P-9 further contends that the trusteeship is invalid because, at the hearing, the Local was not permitted to present evidence on the International's lack of authority to issue the directive. The sole issue was whether Local P-9 violated the March 13 directive. We believe that the hearing examiner acted properly in focusing on whether Local P-9 complied with the directive. The hearing rules permitted Local P-9 to make its constitutional arguments in its post-hearing statement. After receiving the hearing examiner's report and the post-hearing statements, the International Executive Committee issued its decision and order imposing the trusteeship and rejecting the Local's argument. See UFCW Const., art. 9(H)(3)(i), App., Vol. 1 at 9. The Local never exercised its opportunity to appeal from that decision to the International President and the Executive Board, designated authorities on constitutional matters. See UFCW Const., arts. 9(H)(4)(a), 10(E)(1), id. at 9, 11. In light of this available process and our policy of deference to the International's interpretation of its constitution, see Washington v. Laborer's Int'l Union, 792 F.2d 94, 96 (8th Cir.1985), we find no error in the district court's determination that a fair hearing was held.
 
 II.
 
 20
 Local P-9 asserts that because the purpose of the trusteeship was to stop the unauthorized strike, section 4 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 104 (1982), bars the district court from issuing an injunction enforcing the trusteeship. We reject this argument.
 
 
 21
 We have already determined that the International's actions met Landrum-Griffin's prerequisites for imposing a trusteeship. As Judge Friendly recognized in National Association of Letter Carriers v. Sombrotto, 449 F.2d 915 (2d Cir.1971), "[i]f locals were permitted to refuse to accept trusteeships and the federal courts have no jurisdiction to assist parent unions, the trusteeship scheme established by Congress would be effectively thwarted." Id. at 919. Instead, the literal provisions of the Norris-LaGuardia Act must be accommodated to the subsequently enacted trusteeship provisions of the Landrum-Griffin Act.
 
 
 22
 The Supreme Court took this approach in Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), where the Court departed from the literal anti-injunction mandate of Norris-LaGuardia in order to promote "the successful implementation of the arbitration process" as envisioned in section 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. Sec. 185(a). Boys Markets, 398 U.S. at 252, 90 S.Ct. at 1593. In Boys Markets, the court held that a federal court could issue an injunction preventing a strike when the collective bargaining contract contained the union's agreement to submit disputes to arbitration.
 
 
 23
 Similarly, we further congressional intent behind the trusteeship provisions of the Landrum-Griffin Act by holding section 4 of the Norris-LaGuardia Act to be inapplicable to trusteeships otherwise valid under Landrum-Griffin. See Sombrotto, 449 F.2d at 919. Surely, Congress understood that the effect of a trusteeship is to suspend local autonomy for a short time period, and that such a suspension will inevitably affect the exercise of activities otherwise protected under section 4 of the Norris-LaGuardia Act. As in Boys Markets, where the Court noted that "the union freely undertook a specifically enforceable agreement to submit disputes to arbitration," Boys Markets, 398 U.S. at 252-53, 90 S.Ct. at 1593 (footnote omitted), the Local in this case must recognize that it voluntarily accepted the UFCW Constitution as a binding contract with the International. It cannot complain when an injunction issues, not because of judicial intervention on the side of the International, but simply because the Local is "compelled to comply with limitations to which it has previously agreed." Id. at 253 n. 22, 90 S.Ct. at 1593 n. 22.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota
 
 
 [2]
 Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc) (whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest)
 
 
 [3]
 See discussion, infra pp. 550-551
 
 
 [4]
 The Local also argues that the International did not have constitutional authority to withdraw strike sanction once given. We need not address this argument in light of the Local's other strike-related activities--the nationwide boycott and the roving picket lines--that were never sanctioned by the International and that were also the basis for the directive