Jordan Rossen, Leonard R. Page, Daniel W. Sherrick, Intern. Union, UAW, Detroit, Mo., Morris Levin, Sheldon Weinhaus, Levin & Weinhaus, St. Louis, Mo., for defendants.

**Wayne BELUE, et al., Plaintiffs,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS, AFL–CIO (UAW), et al., Defendants.**

**No. 87–0690C(6).**

United States District Court, E.D. Missouri, E.D.

May 1, 1987.

## MEMORANDUM

GUNN, District Judge.

This matter comes before the Court on the request of plaintiffs for preliminary injunctive relief. After a hearing in open court on April 22, 1987 and a review of the record, the Court concludes that injunctive relief is not warranted. In accordance with Rule 52(a) and Rule 65, Fed.R.Civ.Pro., the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

This Court has jurisdiction over this matter pursuant to § 304(a) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 464(a).

Plaintiffs are members in good standing of UAW Local 25 in St. Louis, Missouri. Defendant UAW is an international labor organization with headquarters in Detroit, Michigan which maintains a regional office (Region 5) within this judicial district.

Local 25 is an amalgamated local union with approximately 2800 active and 3000 retired members. Of the active members approximately 2200 work at General Mo-

tors' St. Louis Truck and Bus Assembly Plant, while between 550 and 600 work at the General Motors Parts Depot.

*Over the years* General Motors has curtailed production at the Truck Assembly Plant, and on various occasions within the last decade General Motors has indicated an intent to close the plant. In early 1987 General Motors announced that the plant would close in June 1987. This anticipated closing date has as of this time been moved back to August 7, 1987. General Motors has the necessary bargaining agreements and permits to continue operations throughout 1987, and it is not certain that the plant will close on August 7th. Should it close, 1900 Assembly Plant workers have transfer rights carrying full seniority to the General Motors plant in Wentzville, Missouri pursuant to paragraph 96 of the UAW/General Motors National Agreement. The transfer agreement extends to General Motors a year's time to effect such transfers. Local 25 is not the local bargaining representative for employees at the General Motors Wentzville plant.

The LMRDA and the UAW Constitution require local unions to conduct officer elections every three years. Local 25 was scheduled to conduct its triennial election during May and June 1987. On March 9, 1987 UAW Local 25 President Cecil Lawson invited UAW Region 5 Assistant Director Roy Wyse to attend a special meeting of the UAW Local Executive Board. At the meeting Wyse suggested that the Local Board request a friendly administratorship under Article 12, section 3 of the UAW Constitution and thereby postpone the triennial elections. Wyse suggested that an administrator might assist the local in negotiating a closing agreement for the Assembly Plant. The local Union Executive Board voted 7 to 3 to request an administratorship.

On March 12, 1987 the membership of Local 25, meeting in three sessions, voted 335 to 96 to proceed with elections on schedule. Local 25 members received notice on March 20, 1987 of April 5th as the date for entry of nominations and for the election of a Local Union Election Committee. Notwithstanding this membership vote, Lawson wrote to Region 5 Director Ken Worley on March 17th requesting an administratorship for Local 25.

Article 12, section 3 of the UAW Constitution empowers the UAW International Executive Board (IEB), composed of the UAW International President, Secretary-Treasurer, five Vice Presidents and sixteen Regional Directors, to appoint an administrator to have full authority and supervision over the affairs of a Local Union. The UAW Constitution does not require approval of the Local Union Executive Board or the local union membership before the IEB may impose an administratorship.

On March 23, 1987 UAW Secretary-Treasurer Ray Majerus sent mailgrams to the top four officers of Local 25 notifying them of a show cause hearing to be held in Detroit at a previously scheduled quarterly meeting of the IEB on March 25th. The IEB was not scheduled to meet again until June 1987. The Local officers received the mailgrams at 10:30 a.m. on March 24th. President Lawson had received oral notice of the hearing on the afternoon of March 23rd and instructed his secretary at that time to make airline and motel reservations for all members of the Local 25 Executive Board. After receipt of the mailgrams by the top four union officers, Lawson orally informed the remaining members of the Local Executive Board of the show cause hearing.

Local Union Financial Secretary William Ogden, after receiving a mailgram, announced that he would neither attend nor authorize expenditures for other Board members to attend. He conveyed his refusal to the IEB, stating that the local membership had voted overwhelmingly against an administratorship and challenging the adequacy of notice from the IEB. Ogden had opposed the administratorship at the Local Union Executive Board meeting on March 9th. Adam Case, Chairman of the Local Shop Committee and another Executive Board member who had opposed the request for an administratorship, declined to attend the show cause hearing because he had not received written notice.

Lawson, however, had invited him to attend and had arranged for his transportation and accommodations.

The IEB went forward with the show cause hearing on March 25th. Lawson and Worley testified, and Ogden's mailgram to the IEB was read. None of the eight members of the Local Union Executive Board in attendance opposed the administratorship. At the close of the hearing the IEB voted unanimously to impose an administratorship on the Local and appointed Ken Worley the administrator. Worley thereafter cancelled the Local 25 elections.

On April 2, 1987 Adam Case and Wayne Belue, an announced candidate for president of Local 25 who apparently enjoys significant support among the membership, filed an emergency appeal with the UAW Public Review Board (PRB). The PRB is an independent panel which sits in final judgment over all internal union appeals pursuant to Article 33 of the UAW Constitution and which has jurisdiction over a member's appeal from the imposition of an administratorship. In their appeal to the PRB, Case and Belue assert the same grounds for relief from the administratorship that are asserted in the instant petition for injunctive relief. The PRB held a fact-finding hearing in St. Louis on April 25th and has scheduled a hearing in Washington, D.C. on May 9th. A further complaint with regard to the foregoing facts was filed with the United States Secretary of Labor and is currently under investigation.

## CONCLUSIONS OF LAW

In determining whether a preliminary injunction should issue, the Court must consider "1) the threat of irreparable harm to the movant; 2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; 3) the probability that movant will succeed on the merits; and 4) the public interest." *Dataphase Systems, Inc. v.*

*C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

The imposition of an administratorship is presumed to be valid in the absence of "clear and convincing proof" that the administratorship was not established or maintained in good faith for allowable purposes. 29 U.S.C. § 464(c); *Gabauer v. Woodcock,* 520 F.2d 1084, 1093 (8th Cir. 1975).

Plaintiffs allege that the administratorship over Local 25 was established with the bad faith purpose of perpetuating the current executive board in power. The Court concludes, however, that the imminent plant closing at the Truck and Bus Assembly Plant supports the imposition of an administratorship established to save the costs of elections that would likely have to be repeated within months and to facilitate the negotiation of a plant closing agreement.[1]

The Court further concludes that the notice of the show cause hearing was reasonable under all the circumstances. The IEB was scheduled to meet in Detroit on March 23, 1987, and the notice of election schedules mailed out on March 20th suggested that immediate action on the administratorship request would be appropriate. The testimony at the hearing before this Court indicated that the executive board members who opposed the administratorship had actual notice of the hearing and chose not to attend.

Finally, the Court concludes that plaintiffs have not made a showing of irreparable harm if the injunction does not issue. Plaintiffs have a review action pending before the Public Review Board which has been placed on an expedited schedule and have filed a complaint with the Department of Labor. Plaintiffs have not shown that the remedies available under these other pending proceedings are not fair or will not adequately redress their grievances. The Court defers to the proceedings of the specialized tribunal considering plaintiffs'

---

1. There is some question whether the Assembly Plant will, in fact, close on August 7, 1987. The most reliable evidence, however, indicates that as the projected date, and the Court assumes the IEB imposed the administratorship with that date in mind.

claims. *See Hansen v. Guyette*, 814 F.2d 547 (8th Cir.1987).

In accordance with the foregoing, the Court denies plaintiffs' request for injunctive relief.

**THELMA D., et al., Plaintiffs,**